SULLIVAN, Respondent, *v.* CITY OF BUTTE, Appellant

No. 8486

Submitted March 1, 1945. Decided April 5, 1945.

157 Pac. (2d) 479

Mr. P. E. Geagan and Mr. E. J. Foley, both of Butte, for appellant.

Messrs. Meyer & Meyer, of Butte, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from a judgment entered on the verdict of a jury awarding plaintiff damages for personal injuries suffered by him from being burned with ignited gasoline alleged to have been negligently thrown upon him by an employee of the defendant City of Butte.

On August 4, 1942, the defendant City of Butte was engaged in repairing Alaska street in such city. Edward Hannifin was one of a number of men employed by the city in performing such repair work. Hannifin was assigned the job of heating a metal hose used to spray liquid asphalt on the street and in this connection he was using a one-pound coffee can filled with gasoline obtained from a truck belonging to the city.

The firm of M. F. Kiely & Son was engaged in delivering asphalt to the defendant city using its own trucks and employing its own drivers. The plaintiff Hadley F. Sullivan was one of the drivers so employed by M. F. Kiely & Son. As a delivery of asphalt was made, the driver making such delivery was

required to obtain the signature of a representative of the city on duplicate tickets evidencing receipt of the asphalt by the city.

Between 10 and 11 o'clock on the morning of August 4, 1942, the plaintiff Hadley Sullivan having delivered a load of asphalt to the city at Quartz and Alaska streets parked his truck and then, for the purpose of having the duplicate tickets for the load signed, walked south on Alaska street toward where the city's crew of workmen under the direction of Francis Curran, the city engineer, was at work. As plaintiff approached the workmen Hannifin was dropping gasoline from the coffee can along the metal hose when a spark from beneath the metal hose ignited the gasoline in the can, whereupon Hannifin turned and cast the can of gasoline over his shoulder, emptying its flaming contents over the plaintiff. Plaintiff's clothing caught fire and plaintiff was seriously and painfully burned from head to foot.

Hannifin neglected and failed to look where he was about to cast the can of gasoline; he gave no warning before throwing it over his shoulder and plaintiff neither saw the flame nor the can prior to the time the can and its contents were thrown upon him.

In this action plaintiff sued the defendant City of Butte for damages alleging that his injuries had been proximately caused by defendant's employee who, acting within the scope of his employment and in reckless disregard for the safety of others, negligently and carelessly ignited the can of gasoline, the property of defendant, and threw it in the direction of the place where plaintiff then was in such a way and manner that the flames therefrom came in contact with and ignited the clothing of plaintiff and severely burned plaintiff.

Defendant first contends that this suit cannot be maintained for the reason both the plaintiff and the defendant city were ''under the same so-called Workmen's Compensation Act, Plan 3.'' Rev. Codes 1935, sec. 2840.

At the time of the accident the plaintiff Hadley Sullivan

 was under a contract of hire with his employer M. F. Kiely & Son and he was then an "employee" of such firm, as that term is defined in section 2863, Revised Codes. As to the employer M. F. Kiely & Son and the employee Hadley Sullivan, the Workmen's Compensation Act is elective and contractual in character and it became "binding upon the employer and employe at their election, but not otherwise." Shea v. North Butte Mining Co., 55 Mont. 522, 179 Pac. 499, 503. A different situation obtains with respect to the city of Butte, a public corporation, and its employees for, as to such, the Act is exclusive, compulsory and obligatory. Section 2840, Revised Codes; Aleksich v. Industrial Accident Fund, 116 Mont. 127, 151 Pac. (2d) 1016, 1018. However, the plaintiff Hadly Sullivan had entered into no contract of hire with the city of Butte; he was not on the city's payroll and he was not an "employee" of the defendant city, within the meaning of section 2863, Revised Codes. As to Sullivan, the city of Butte was merely a third party. In such case under the express provisions of section 2839, Revised Codes, the plaintiff, upon receiving his said injury, was accorded, in addition to his right to receive compensation under the Act, the right to prosecute any cause of action he may have for damages against such third party so causing such injury. The mere fact that plaintiff's employer, M. F. Kiely & Son, is insured under the same plan (Plan 3) as is Hannifin's employer, the City of Butte, does not render the city immune from plaintiff's statutory suit for damages. To render such immunity there must first exist the contractual relation of employer and employee as such terms are defined in the Act and since this relation did not exist between plaintiff and defendant city the Act does not render defendant immune from either suit or liability. Koppang v. Sevier, 101 Mont. 234, 53 Pac. (2d) 455.

Defendant contends that it was error for the trial court to give, over defendant's objections, plaintiff's offered instructions designated 1, 3 and 11. Instruction No. 1, supra, set forth section 2839, Revised Codes, in its entirety. The evidence

shows that at the time of the trial plaintiff had then received but $900 from the Industrial Accident Board as compensation and there was no showing that he was to receive any further amounts hence, in fixing the amount of its verdict, the jury was not warranted under the evidence in considering subrogation for any amount in excess of $450 under the instruction as given. We therefore fail to see how the defendant can have been prejudiced by the giving of the instruction and, in view of the decision in the case of Koppang v. Sevier, 106 Mont. 79, 75 Pac. (2d) 790, it cannot be said to be error in this particular case for the trial court to have given the instruction since evidence was received injecting this issue into the case.

Instruction No. 3, supra, reads: "You are instructed that ■ the defendant, City of Butte, is responsible and legally liable for any negligent act or omission of any of its servants committed within the scope of and in the course of their employment." Under the facts of this particular case the doctrine of respondeat superior applies and it was proper for the court to so instruct the jury. Griffith v. City of Butte, 72 Mont. 552, 234 Pac. 829; Stevens v. City of Butte, 107 Mont. 354, 85 Pac. (2d) 339.

Instruction No. 11, supra, given at the request of plaintiff, ■ defines "ordinary care" which is a relative term dependent upon the facts and circumstance of each particular case and is such care as a person of ordinary care and prudence would usually exercise under the same or similar circumstances. We find nothing in Instruction 11, supra, that could in any way mislead the jury.

Defendant next contends that it was error for the trial court ■ to refuse defendant's tendered instructions numbered 8-A, 9-A and 11-A. Instruction 8-A, supra, is to the effect that if the plaintiff was guilty of contributory negligence he cannot recover. As an abstract proposition this would be true, but there is no evidence in this record tending to show any negligence on the part of plaintiff, hence the court properly refused to give the instruction. It was not negligence on the

part of plaintiff to fail to anticipate the negligence of the city's employee which occasioned the plaintiff's injury. McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344.

Instruction 9-A, supra, was to the effect that a person is presumed to see that which he could see by looking but there is no evidence in this case that plaintiff failed to look or that he failed to see all that was in plain sight, hence the instruction was properly refused. Ernst v. City of Helena, 104 Mont. 249, 65 Pac. (2d) 1167. The evidence is that the city's employee failed to look, and failing to look he failed to see plaintiff before or at the time he cast the can of ignited gasoline in plaintiff's direction and upon plaintiff's person.

Instruction 11-A, supra, was based upon the sudden emergency rule but the court correctly instructed the jury thereon in another instruction, hence it was not error to refuse the offered instruction. The instruction which the court gave reads: "You are instructed that if you believe from the evidence that Edward Hannifin, without any fault on his part, was confronted with a sudden emergency at and immediately before the time the burning gasoline can was thrown, he was not then required to exercise that degree of care which is necessary when there is time for deliberation; he was required to act only as a reasonably prudent man would act under the same or similar circumstances."

The jury's verdict in this case fixed plaintiff's damages at $15,000. In the lower court the defendant sought to vacate the verdict and made a motion for a new trial alleging as a ground: "Excessive damages appearing to have been given under the influence of passion or prejudice." This, by reason of subdivision 5 of section 9397, Revised Codes, is made a ground upon which to base a motion for a new trial. However, defendant's motion was denied by the trial court and on this appeal the defendant neglected to assign error on the denial of such motion, although, as its tenth specification, defendant urges that, "The verdict is so excessive as to show that it was given under the influence of passion and prejudice."

Strictly speaking, this question can only be presented to this court on a specification based upon the error of the trial court in denying the defendant a new trial. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 Pac. (2d) 1025; Mitchell v. Thomas, 91 Mont. 370, 8 Pac. (2d) 639; Lesage v. Largey Lumber Co., 90 Mont. 372, 43 Pac. (2d) 896.

Upon being struck with the can of ignited gasoline, plaintiff's clothing caught fire and he became a human torch with flames shooting before his face. In an endeavor to avoid the blaze, plaintiff held his head to one side as he ran toward a pile of sand in an attempt to smother the flames but before he reached the sand he was tackled, struck down and held by some of the workmen who were fighting the fire. After plaintiff fell to the ground an attempt was made by some of the workmen to smother the flames with their hands while others shoveled sand on plaintiff. Finally the fire was extinguished and plaintiff then lay on the ground until a stretcher was brought, on which he was taken to a hospital during which time he was partially conscious. Plaintiff's injuries are serious and permanent in character. He has endured great pain. The burns have disfigured and crippled him for life. At the time of the trial in April 1943 many of the burns and wounds had not healed. There were third degree burns on plaintiff's abdomen and on both his legs, surrounded by large areas of second degree burns. There were severe burns on plaintiff's face, neck, arms, chest and genital organs. There was a burn on his hand which has left a scar about three inches by four inches which has not completely healed. Any hitting or striking of the hand or even a sudden movement causes the scar tissue to crack and results in a most painful open wound. Medicine must be applied five or six times daily to this burn irrespective of whether the wound is opened or closed. A burn on the left thigh measuring approximately eight inches by fourteen or sixteen inches has not completely healed as yet. At times the scar tissue on this wound becomes dry and cracks open when the dry skin catches on the plaintiff's clothing

and on the bed clothes causing the scab to pull loose and occasioning much pain. This wound requires medicine and dressing three or four times daily. There is a burn extending from above the left knee cap to three inches below it and any sudden or fast movement of the leg causes this wound to tear open, followed by much pain. There is a burn on the right leg measuring about six by sixteen inches and extending from the groin to about three inches below the right knee. This wound has never completely healed. It requires medicine and dressing and is painful. At the time of the trial there were three openings in a wound on plaintiff's right knee cap. These wounds are painful and interfere with the motion of plaintiff's leg, preventing him from taking a full stride and cracking open under exertion. A physician and surgeon who examined plaintiff testified that the only way in which this condition can be corrected is by a number of skin-grafting operations; that the openings are sore and liable to infection and that if this condition continues, this re-opening may result in cancer. Plaintiff remained in the hospital from August 4th until the middle of the following October. During the first four weeks he was in the hospital he had a high fever and great pain all over his body. For a period of six weeks hypos, drugs and pills were administered to him regularly to alleviate his pain and suffering. He had no natural sleep for the first six weeks during which time he was under the constant care of special nurses. The bill for nurses' hire amounted to $306.95 and was paid by the Industrial Accident Board. The hospital bill amounted to $573.20. Of this amount the Industrial Accident Board paid $193.05, the plaintiff paid $280.15, leaving an unpaid balance of $100 for which plaintiff is now obligated. Dr. Colman, who was plaintiff's physician, testified fully as to the extent and nature of the latter's injuries. Such of plaintiff's wounds and scars as could be properly shown to a mixed jury of men and women was exhibited to and viewed by the jury at the trial. Plaintiff has worked on construction work, in the mines and as a truck driver. At the time of the accident

he was thirty-two years old and employed as a truck driver for which he was paid a wage of $7.50 per day. In the light of such evidence we cannot say that the verdict appears excessive or to have been given under the influence of passion or prejudice. See Staff v. Montana Petroleum Company, 88 Mont. 145, 291 Pac. 1042; White v. Chicago M. & P. S. R. Co., 49 Mont. 419, 143 Pac. 561; Fulton v. Chouteau County Farmers' Co., supra. That a verdict appears to be excessive is not a ground upon which a defendant may base a motion for a new trial. It is only when the excessive damages awarded appear to have been given by the jury under passion or prejudice that supplies a reason under subdivision 5 of section 9397, Revised Codes, for the granting of a new trial. Kelley v. John R. Daily Co., 56 Mont. 63, 181 Pac. 326.

Here the trial court placed its stamp of approval on the findings of the jury by denying defendant's motion for a new trial. Defendant does not assign error upon this ruling and, in the absence of any showing of an abuse of discretion, this court may not set aside such ruling.

The judgment is affirmed.

Associate Justices Morris and Angstman concur.

Mr. Chief Justice Johnson and Associate Justice Cheadle (concurring).

We concur in the above decision. However we must express a serious doubt as to the correctness of the decision of this court in Koppang v. Sevier, 106 Mont. 79, 75 Pac. (2d) 790, in seeming to hold that the right of subrogation under section 2839 may properly be brought, by instruction or otherwise, to the attention of a jury in a damage action. Whether or not the right of subrogation exists under that statute, the matter appears to be irrelevant to the issue. The question is the proper pecuniary measure of damages sustained by the plaintiff resulting from defendant's negligence, upon which the matter of subrogation has no apparent bearing.