Sydney **BRENNER**, Plaintiff,

v.

The **TEXAS COMPANY**, a corporation, Standard Oil Company of California, a corporation, Shell Oil Company, Incorporated, a corporation, Richfield Oil Corporation, a corporation, General Petroleum Corporation, a corporation, Tide Water Associated Oil Company, a corporation, and Union Oil Company of California, a corporation, Defendants.

No. 34915.

United States District Court
N. D. California, S. D.

April 3, 1956.

A. J. Zirpoli, San Francisco, Cal., for plaintiff.

James O. Sullivan, Los Angeles, Cal., for defendant Texas Co. ·

Francis R. Kirkham, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant Standard Oil Co.

William J. DeMartini, Los Angeles, Cal., for defendant Richfield Oil Corp.

Sims Hamilton, Los Angeles, Cal., for defendant General Petroleum Corp.

Edmund D. Buckley, San Francisco, Cal., for defendant Tide Water Associated Oil Co.

Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant Union Oil Corp.

S. R. Vandivort, San Francisco, Cal., for Shell Oil Company, Inc.

ROCHE, Chief Judge.

The complaint herein was filed on the 20th day of September, 1955. Plaintiff alleges that this court has jurisdiction of this action under the provisions of the

anti-trust laws, 15 U.S.C.A. §§ 15 and 26. Plaintiff also alleges that the "acts of the defendants * * * have constituted and do constitute an unlawful combination in restraint of, and a monopoly of and attempt to monopolize interstate trade and commerce, in violation of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, and the Clayton Act, 15 U.S.C.A. §§ 14 and 18."

Plaintiff, a service station operator who once operated a station in Emeryville, California, seeks treble damages against defendants. After commencement of this action, the deposition of plaintiff was taken by defendant, The Texas Company, pursuant to Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A. On the basis of this deposition and the pleadings herein, defendants have moved for summary judgment.

No attempt will be made in this opinion to summarize in full the complaint, but sufficient reference will be made to the pertinent allegations thereof to indicate the basis for the court's ruling. Plaintiff alleges that he operated a service station selling approximately twenty thousand gallons of gasoline, which he later increased to thirty-two thousand; that defendants have acted concertedly together through agreement and understanding, and pursuant thereto have mutually and jointly adopted and conducted their businesses in accordance with common plans and programs, which each defendant company has adopted with the understanding and knowledge that all of the other companies will do so, in order to accomplish the following: (a) control and regulate prices, (2) restrict, limit and control the type and amount of business engaged in by independent wholesale and retail distributors, and to eliminate and control competitors, including the plaintiff herein; that defendants produce approximately ninety percent of all gasoline sold and distributed to the consumers in the Pacific Coast area; that defendants are doing business in this judicial district; that interstate commerce is involved because gasoline which is produced by defendants at refineries located principally in the State of California is transported throughout the Pacific Coast area, and purchases and deliveries made to plaintiff affects the total volume of gasoline shipped throughout the Pacific Coast area.

The complaint alleges as specific injury to plaintiff, that pursuant to the aforesaid plans and programs, since September 27, 1952, defendants have refused and continue to refuse to sell and make available for sale gasoline and other refined petroleum products to plaintiff, although plaintiff has offered to purchase gasoline from each and every one of the defendants; that said refusal to sell plaintiff results from the fact that plaintiff has refused to adhere to the artificial price fixing and price maintenance programs instigated and adopted by defendant companies; that but for the concerted refusal of the defendants to sell gasoline to plaintiff, plaintiff would and could continue to operate his service station and that by reason of the joint refusal to supply gasoline, and the monopoly of supply enjoyed by defendants, plaintiff was caused to discontinue and cease operating his business.

There are also general allegations that as a result of the destruction and cessation of plaintiff's business the interstate shipment of gasoline and petroleum products to more than 25,000 service stations throughout the Pacific Coast area have been directly affected; that defendants' ownership and control of an increased number of retail service stations has caused elimination of competition of independent wholesale and retail distributors, and the policy of favoring, preferring and subsidizing retail service stations which they own has had a serious effect upon wholesale and retail distributors and upon consumers in the states comprising the Pacific Coast area.

 The primary purpose of the Anti-Trust Act is to prevent undue restraints of interstate commerce in the public interest, and to afford protection of the public from subversive or coercive influences of monopolistic efforts. Ap-

palachian Coals, Inc., v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L.Ed. 825. The right granted to individual suitors to seek reparation is secondary and subordinate in purpose. Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885.

In a case of this kind brought by an individual suitor it is essential that the complaint allege a violation of the Act in the form of an undue restriction or obstruction of interstate commerce and damages to plaintiff proximately resulting from the acts and conduct constituting the violation. As Congress exercised its full power over interstate commerce in the enactment of the Sherman Act, it extends not only to transactions in the stream of interstate commerce, but also to intrastate transactions which substantially affect interstate commerce. Las Vegas Merchants Plumbers Association v. United States, 8 Cir., 210 F.2d 732.

The complaint in this case alleges that "gasoline marketed in the Northern District of California is produced at refineries located principally in the State of California." Therefore, this is not a case of restraints placed on products brought into this state for sale or use as in the case of Las Vegas Merchants Plumbers Ass'n v. United States, supra, or on a product which thereafter leaves the state. Rather as in the case of Myers v. Shell Oil Co., D.C., 96 F. Supp. 670, wherein summary judgment was granted, the purchase and sale of petroleum products by plaintiff was entirely an intrastate transaction. The movement of gasoline sold to plaintiff falls short of the continuousness necessary to keep the transaction in the flow of interstate commerce. United States v. Chrysler Corporation, 9 Cir., 180 F.2d 557.

As stated above, the Sherman Act also applies to intrastate transactions which affect interstate commerce, but the effect must be substantial. The theory of the plaintiff's complaint on this point is that the "cessation" of delivery of gasoline to plaintiff "affected" the shipment of gasoline out of California. However, the complaint also alleges that "Plaintiff is one of thousands of service stations" and "there are more than 25,000 service stations throughout the Pacific Coast area." Following this line of reason to its logical conclusion, the effect that defendants' alleged conspiracy would have on interstate commerce is that *more* gasoline would be available for shipment out of California. In view of the small amount of gasoline handled by plaintiff it could not be said that this would have a *substantial* effect on interstate commerce. However, reason tells us that even if the defendant companies did conspire to stop selling gasoline to plaintiff, nevertheless the motorists of California and Alameda County would continue to purchase the same amount of gasoline as they had prior to the closing of plaintiff's station. In which case neither more nor less gasoline would be available for export from California, thereby not affecting interstate commerce at all.

The court concludes that the complaint, when read in conjunction with the facts developed in plaintiff's deposition, does not show as a matter of law that the alleged conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the flow of interstate commerce. Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, 522.

In accord with the foregoing

It is ordered that defendants' motions for summary judgment herein are granted. The respective parties to pay their own costs.