Elsie HAMMAN, Plaintiff,

v.

UNITED STATES of America, Washington Iron Works, a Washington corporation, Morrison-Knudsen Company, Inc., a Delaware corporation, Perini Corporation, a Massachusetts corporation, Walsh Construction Company, Inc., an Iowa corporation, and Kaiser Company, a Nevada corporation, jointly and severally, Defendants.

Arlene Hartung REED, Administratrix of the Estate of her deceased husband, Adam Hartung, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Anna LOYNING, Adminstratrix of the Estate of her deceased husband, Sidney A. Loyning, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Alice R. BLANCO, Individually and as Guardian ad Litem for Tony Jerome Blanco, David Martin Blanco, Sylvia Irene Blanco, Angela Fern Blanco and Rose Kathleen Blanco, and as Administratrix of the Estate of Frank Jerry Blanco, Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. Nos. 476, 477, 522, 493.

United States District Court
D. Montana,
Billings Division.
March 22, 1967.

See also D.C., 267 F.Supp. 408.

In causes 476, 477 and 522: Marcus, McCroskey, Libner, Reamon, Williams & Dilley, Muskegon, Mich., Lee Overfelt, Billings, Mont., J. H. McAlear, Red Lodge, Mont., and Robert H. Wilson, Hardin, Mont., for plaintiffs. In cause 493, Sandall, Moses & Cavan, Billings, Mont., for plaintiffs.

Moody Brickett, U. S. Atty., and Robert T. O'Leary, Asst. U. S. Atty., Butte, Mont., for defendant United States.

Cooke, Moulton, Bellingham & Longo, Billings, Mont., for defendant Washington Iron Works.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendants Morrison-Knudsen Co., Inc., Perini Corp., Walsh Const. Co., Inc., and Kaiser Co.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

Defendants Morrison-Knudsen Company, Inc., Perini Corporation, Walsh Construction Company, Inc., and Kaiser Company have filed motions for summary judgment in cases 476, 477 and 522. By stipulation it has been agreed that these motions and all documents filed with respect thereto will apply equally to case 493.

In each of the four actions, which have been consolidated for trial, the plaintiff seeks damages for the death of a workman who was killed when a cableway "man-skip" used in the construction of Yellowtail Dam and in which the decedent was riding, ran against a canyon wall and spilled its occupants to the floor of the canyon. The decedents were all employees of Yellowtail Constructors,[1] which was building Yellowtail Dam pursuant to a contract with the Bureau of Reclamation, an agency of the United States Government.[2]

The defendants contend that they were joint venturers doing business as "Yellowtail Constructors"; that each of the decedents was an employee of the joint venture and was killed in the course of his employment; and that the joint venturers accordingly are immune from civil liability under the terms of the Workmen's Compensation Act of the State of Montana. Plaintiffs contend that (1) under the Montana law, a member of a joint venture is not an "employer" to an employee of the joint venture, and therefore, receives no immunity from third party tort actions; (2) there was no joint venture relationship in fact; (3) the employment contract under which the decedents were employed named one employer, Yellowtail Constructors, and since this agreement is consensual, defendants are estopped from asserting that they were employers of the decedents; (4) assuming the existence of a joint venture, defendant Morrison-Knudsen dealt independently as a third party with the joint venture in providing engineering services and may therefore not claim immunity under the Montana Workmen's Compensation Laws; and (5) the agreement among the defendants was an illegal conspiracy in restraint of trade which estops the defendants from asserting the agreement as a defense to achieve immunity.

1. Is a member of a joint venture an "employer" within the meaning of the Montana Workmen's Compensation Act?

The pertinent portions of the Montana Act, found in R.C.M.1947, sections 92–201—92–204 provide:

"92–201. *Defenses excluded in personal injury action—negligence of employee—fellow servant—assumption of risk.* In an action to recover damages for personal injuries sustained by an employee in the course of his employment, or for death resulting from personal injuries so sustained, it shall not be a defense:

(1) That the employee was negligent, unless such negligence was willful;

---

1. Yellowtail Constructors was composed of the defendants Morrison-Knudsen Company, Inc. (together with its subsidiary, F & S Construction Co.), Perini Corporation, Walsh Construction Company, Inc. and Kaiser Company.

2. On March 1, 1967, the defendant Washington Iron Works filed a separate amended answer and crossclaim against the defendants Morrison-Knudsen Company, Inc., Perini Corporation, Walsh Construction Company, Inc. and Kaiser Company seeking indemnity from these defendants for any amounts which might be recovered by the plaintiffs against Washington Iron Works.

(2) That the injury was caused by the negligence of a fellow employee;

(3) That the employee has assumed the risks inherent in, incident to, or arising out of his employment, or arising from the failure of the employer to provide and maintain a reasonably safe place to work, or reasonably safe tools or appliances."

"92–203. *Employers not liable for death or injury other than herein defined—employees who elect not to come under law.* Any employer who elects to pay compensation as provided in this act shall not be subject to the provisions of section 92–201, nor ᵇhall such employer be subject to any other liability whatsoever for the death of or personal injury to any employee except as in this act provided; and, except as specifically provided in this act, all causes of action, actions at law, suits in equity, and proceedings whatever, and all statutory and common-law rights and remedies for and on account of such death of, or personal injury to, any such employee are hereby abolished; provided, that section 92–201 shall not apply to actions brought by an employee who has elected not to come under this act, or by his representatives, for damages for personal injuries or death, against an employer who has elected to come under this act."

"92–204. *Election of employer and employee to come under act—action against third party causing injury.* Where both the employer and employee have elected to come under this act, the provisions of this act shall be exclusive, and such election shall be held to be a surrender by such employer and such employee, as between themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, except as such rights may be hereinafter specifically granted; and such election shall bind the employee himself, and in case of death shall bind his personal representative, and all persons having any right or claim to compensation for his injury or death, as well as the employer, and those conducting his business during liquidation, bankruptcy or insolvency. Provided, that whenever such employee shall receive an injury while performing the duties of his employment and such injury or injuries, so received by such employee, are caused by the act or omission of some persons or corporations other than his employer, then such employee, or in case of his death his heirs or personal representatives, shall in addition to the right to receive compensation under the Workmen's Compensation Act, have a right to prosecute any cause of action he may have for damages against such persons or corporations, causing such injury. * * * "

It thus appears that if parties to a joint venture agreement may be considered "employers" under the above act, an injured employee may not avail himself of any remedy other than the Workmen's Compensation Act itself.

Yellowtail Constructors had elected to be bound by plan two of the Workmen's Compensation Act of Montana.[3] A policy of insurance was issued by The Travelers' Insurance Company to "Yellowtail Constructors, a Joint Venture, et al". An endorsement designated the name of the insured as "Yellowtail Constructors, a Joint Venture consisting of Morrison-Knudsen Company, Inc., Perini Corporation, The Kaiser Company, Walsh

---

3. R.C.M.1947, § 92–1001 provides that: "An employer * * * may, by filing his election to be bound by compensation plan No. 2, insure his liability to pay the compensation and benefits provided by this act with any insurance company authorized to transact such business in this state".

Construction Company, and F & S Contracting Company".

Claims for compensation were asserted by the dependents of all of the deceased workmen, compensation was awarded by the Industrial Accident Board of Montana for the amounts to which they were respectively entitled, and this compensation has been maintained and paid by The Travelers' Insurance Company.

Plaintiffs do not question these facts but still argue that the members of the joint venture were not "employers" within the meaning of the Act. Since both parties rely in part upon cases involving partnerships, it seems advisable to refer briefly to the relationship between partnerships and joint ventures under Montana law. The Supreme Court of Montana has discussed quite fully the similarities and distinctions between joint ventures and partnerships and has concluded that in general they are similar and analogous, except that a joint venture has narrower functions. In Rae v. Cameron, et al, 1941, 112 Mont. 159, 114 P.2d 1060, 1066, the court quoted with approval the following statement from 30 Am.Jur. 679, § 5:

"It is sometimes difficult, and often unnecessary, to distinguish in particular cases between joint adventures and partnerships, since the relations of the parties to a joint adventure and the nature of their association are so similar and closely akin to a partnership that it is commonly held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to, and generally substantially the same as, those which govern partnerships. Some courts have gone so far as to say that a joint adventure is subject to exactly the same rules as a technical partnership, and must be enforced by the same principles. In general, however, it is now understood that the two relationships are not identical and that decisions defining and describing partnerships are not necessarily controlling upon the question of whether parties to a particular contract are joint adventures. The outstanding difference between a joint adventure and a partnership is that the former relates to a single transaction, although it may comprehend a business to be continued over several years, while the latter relates to a general and continuing business of a particular kind, although there may be a partnership for a single transaction. Because of the limited scope of the relationship between the joint adventurers, it is generally more informal than the relationship between partners, and some of the incidents of partnership do not, or at lease may not, attach thereto." (112 Mont. at 167–168, 114 P.2d at 1064).[4]

Under this rule, decisions defining and describing partnerships are helpful, although not necessarily controlling on any given question. Montana has adopted the Uniform Partnership Act, which appears as Title 63, R.C.M.1947. Section 63–207 provides that partners are liable jointly and severally for everything chargeable to the partnership under previous sections relating to tort liability, but that liability is only joint for contract debts and obligations of the partnership.

Plaintiffs contend that because of this statute and the fact that workmen's compensation is contractual in character,[5] there can be no several immunity because there is no several liability. In support of this contention, plaintiffs rely primarily upon a series of Minnesota cases. In Gleason v. Sing, 1941, 210

---

4. In different contexts, the Rae case was relied upon by this court in Larson v. Robinson, D.Mont.1955, 136 F.Supp. 469, and Carson Construction Co. v. Fuller-Webb Construction, 1961, D.C., 198 F.Supp. 464, 468, and the rules stated therein have been followed in subsequent Montana decisions. See In re McAnelly's Estate, 1953, 127

Mont. 158, 258 P.2d 741; Bradbury v. Nagelhus, 1957, 132 Mont. 417, 319 P.2d 503.

5. See State ex rel. Morgan v. Industrial Accident Board, 1956, 130 Mont. 272, 301 P.2d 954; Wirta v. North Butte Mining Co., 1922, 64 Mont. 279, 210 P. 332, 30 A.L.R. 964.

Minn. 253, 297 N.W. 720, a workmen's compensation claimant was an employee of a partnership, and injured in the course of his employment. The court held that a partnership is an entity distinct from the individuals comprising it, that workmen's compensation is contractual in character, and that a claim under the act would be allowed for an injury inflicted by a fellow servant. The Gleason case was followed in Monson v. Arcand, 1953, 239 Minn. 336, 58 N.W.2d 753, where it was held that in a negligence action the partnership is a separate employing entity, and an employee of the partnership is not an employee of the individual partner. However, the court recognized that this position has not been followed in many other jurisdictions and cites cases to that effect from California, Missouri, New York and Wisconsin. (58 N.W.2d at 756, note 3).

The California and majority rule is directly contrary to that of Minnesota. In Sonberg v. Bergere, 1963, 220 Cal.App. 2d 681, 34 Cal.Rptr. 59, an employee of a partnership brought a personal injury action against one of the members of the partnership. The partnership was covered under the California Workmen's Compensation Act. The court held that an employee of a partnership is an employee of each of the partners and may not accordingly maintain an action to recover damages from a negligent partner.[6]

Moreover, many states which follow the entity theory of partnership law, apply a different rule to joint venturers with respect to the effect of workmen's compensation laws. In W. B. Johnston Grain Company v. Self, Okl., 1959, 344 P.2d 653, an employee of a joint venture was awarded workmen's compensation against one of the members of the venture and its insurance carrier. The carrier brought a proceeding to review the award, contending that a joint venture is a separate legal entity and that therefore, the individual members of the joint venture, under Oklahoma law, were not "employers" of the claimant for purposes of workmen's compensation. In sustaining the award the court found that a joint venture is not a separate legal entity, that an employee of a joint venture is an employee of each of the joint venturers under ordinary principles of agency, and that each joint venturer and his insurance carrier was severally and jointly liable for an award to an injured employee of the joint venture. This ruling was made despite the fact that Oklahoma courts had previously held that partnerships were entities and that an employee of a partnership was not an employee of the individual partners.[7]

The Johnston Grain case has been followed in a number of cases in other jurisdictions where a partnership is considered to be an entity for some purposes. See Clawson v. General Insurance Company of America, 1966, 90 Idaho, 424, 412 P.2d 597; Industrial Commission v. Lopez, 1962, 150 Colo. 87, 371 P.2d 269.[8]

In Cook v. Peter Kiewit Sons Company, 15 Utah 2d 20, 386 P.2d 616, the court held that the plaintiff workman

---

6. The court said in part:
 "Except under exceptional circumstances, and there are none here, a partnership is not recognized as a distinct entity separate from its members (Reed v. Industrial Acc. Com., 10 Cal. 2d 191, 73 P.2d 1212, 114 A.L.R. 720, and cases there cited), and an employee of a partnership is an employee of each of the partners. (Reed v. Industrial Acc. Com., supra. See, also, Park v. Union Mfg. Co., 45 Cal.App.2d 401, 114 P.2d 373.)" (34 Cal.Rptr. at 60).

7. The court states that the "principal reason for the conclusions that a partnership was a separate entity * * * was the statute which made partnership debts joint obligations rather than joint and several". Oklahoma has adopted the Uniform Partnership Act, and the statute referred to is comparable to R.C.M.1947, § 63–207, supra. The court also pointed out that it had held that workmen's compensation actions are contractual in nature.

8. See also Parks v. Riverside Insurance Company of America, 10 Cir. 1962, 308 F.2d 175 (Oklahoma).

was not entitled to bring a third party action against a member of a joint venture. It is true, as plaintiffs contend, that the Utah statute precludes an action against another person "in the same employment", and to that extent Cook is distinguishable. In other respects it is factually less favorable to plaintiffs' position in that the plaintiff in Cook was on the payroll of only one member of the joint venture. The court held that "these companies became partners in the venture just the same as if two individuals had entered into it, and whatever one company and its employees did in furthering the project would inure to the benefit of the other. Accordingly, it would seem that Coker's act in paying premiums for workmen's compensation to protect itself against loss should also redound to the benefit of Kiewit and vice versa." (386 P.2d at 618).[9]

■ R.C.M.1947, § 92–410 defines "employer" for purposes of the Montana Workmen's Compensation Act in part as: "every person, firm, voluntary associations and private corporation * *." Manifestly, this language is broad enough to include within its terms a "voluntary association" such as a joint venture.

■ Under the foregoing authorities, it seems clear that if in fact there was a joint venture, the individual members thereof would be "employers" within the meaning of the Montana Workmen's Compensation Act, and as such, would be immune from tort actions for the death of employees of the joint venture; and this would be true even though Montana should hold, contrary to California, that a partnership is a distinct entity apart from its members.

2. Was there a joint venture in fact?

■ It is true, as plaintiffs contend, that where the existence of a joint venture is denied, the question is ordinarily one of fact for the jury. In Re McAnelly's Estate, 1953, 127 Mont. 158,

168, 258 P.2d 741, 746, states the rule as follows:

" * * * The courts have not laid down any very certain, satisfactory, or all-inclusive definition of a joint adventure, being content, in most cases, to determine whether the given or conceded facts in the particular cases constitute a joint adventure. 138 A.L.R. 970.

" * * * And the rule seems well settled that where the existence of the relationship of joint adventurers is in issue, and there is substantial evidence tending to prove that the parties intended to join their efforts in furtherance of the enterprise for their joint profit, the question is pre-eminently one of fact. 138 A.L.R. 969."

It is true also that the defense of immunity by reason of the Workmen's Compensation Act must be alleged and proved by the defendants.

Defendants contend that the undisputed facts as disclosed by the pleadings, affidavits, exhibits, and depositions clearly establish a joint venture, and that there is no longer any genuine issue of fact. In plaintiffs' brief filed July 16, 1965, it was stated that "after a responsive pleading is filed," plaintiffs "will avail themselves of the discovery procedure to show absence of a joint venture * * *". Thereafter defendants filed their answer, and extensive discovery was conducted. Briefs subsequently filed by plaintiffs on December 13, 1966, and January 9, 1967, make no reference to the evidence upon which plaintiffs may rely to show the absence of a joint venture.

It is alleged in paragraph 10 of the third amended complaint (and not denied by defendants), "That the defendant United States of America was the possessor of the construction site and had contracted with the defendants Morrison-Knudsen Company, Inc., Perini Corporation, Walsh Construction Company, Inc.

---

**9.** It does not appear whether Utah follows the distinct entity theory of partnership, the court citing with approval both In-

dustrial Commission v. Lopez, supra, and Reed v. Industrial Acc. Com., supra.

and Kaiser Company for the construction of the Yellowtail Dam." It appears undisputed that these defendants, with F & S Contracting Company [10] had jointly submitted a bid, which was accepted by the Government. After the contract was awarded, a joint venture agreement was executed by the five members on May 1, 1961. On May 29, 1961, a "Certificate of Assumed Business Name", likewise executed by the five members of the joint venture and dated May 1, 1961, was filed for record in the office of the County Clerk and Recorder of Big Horn County, where the damsite is located.

Under date of April 28, 1961, a contract was entered into between Yellowtail Constructors and the Billings, Montana Building and Construction Trade Council and various affiliated unions. "Yellowtail Constructors" is not otherwise defined or described in this agreement.

As noted supra, a policy of insurance was issued to Yellowtail Constructors, a joint venture, and the five members were listed in an endorsement designating the name of the insured.

In support of their contention that a factual issue is raised with respect to the existence of a joint venture, plaintiffs rely primarily upon Richardson v. Walsh Construction Company, 3 Cir. 1964, 334 F.2d 334. The defendants in that case were the same four defendants who seek summary judgment in this case. The district court denied recovery, after submitting the question of the existence of a joint venture to the jury, with the jury finding that there was in fact a joint venture. The Court of Appeals reversed, holding that the meager evidence submitted was insufficient to establish joint venture and remanded the case for a new trial for further evidence.

In Richardson, the defendant B. Perini & Sons, Inc. was not served, and at a pretrial conference the plaintiff consented to a dismissal of the complaint as against this defendant. "The other defendants filed an answer in which they admitted that plaintiff was a laborer in the employ of B. Perini & Sons." However, in a separate defense they alleged that the plaintiff was in the joint employ of all of the named defendants, and that his exclusive remedy was under the Pennsylvania Workmen's Compensation Act.[11] The court held that the "issue as to the plaintiff's employment having been asserted by the defendants, the burden was upon them to prove it".

No such factual situation is here presented. It is difficult to see that any genuine issue of fact is presented. I do feel, however, that plaintiffs should be given a further opportunity to apprise the court of the evidence upon which they rely to raise an issue of fact with respect to the existence of the joint venture.

3. Was there a change of employer without the knowledge and consent of the employee?

Since workmen's compensation is basically contractual in nature, and depends upon the employer-employee relationship, (State ex rel. Morgan v. Industrial Accident Board, supra) the general rule is that the employer may not be changed without the consent of the employee. "There are circumstances under which there may be a change of employer but only with the knowledge and consent of the employee. However, if the change is effected pursuant to a private understanding between the employers and without the knowledge and acquiescence of the employee, the assent necessary to support the statutory presumption is lacking. The right of the employee to maintain a common law action against the second employer is not barred." Richardson v. Walsh Construc-

---

10. It appears that F & S Contracting Company is a Montana corporation and was not joined as a party defendant.

11. It may be noted that the court agreed with the district court that if in fact there was a joint venture, the plaintiff's exclusive remedy was under the Workmen's Compensation Act.

tion Company, supra, 334 F.2d at 337. See also 99 C.J.S. Workmen's Compensation § 40, p. 226.

█ In the instant case, we do not have, as in Richardson, a change from employment by one of the defendants to a joint employment by the four defendants. The employment contract here was with "Yellowtail Constructors" without further description of the contracting party. There is nothing in the record to indicate that Yellowtail Constructors was ever anything other than a joint venture composed of the four defendants and F & S Contracting Company. It was so described in the joint venture agreement and in the insurance policy under which the dependents of all of the decedents have collected benefits pursuant to the Workmen's Compensation Act.

As with the issue of the existence of a joint venture, I believe plaintiffs should be given a further opportunity to indicate the evidence upon which they may rely to show a change of employer.

4. Assuming the existence of a joint venture, did Morrison-Knudsen act as an independent third party to the joint venture in supplying engineering services?

Plaintiffs contend that Morrison-Knudsen dealt independently and as a third party with the joint venture in providing engineering services to the joint venture for the design and installation of the cableway, and that the negligence of Morrison-Knudsen's employee Charles Farris in the design and installation was the cause of the cableway failure and the death of plaintiffs' decedents.

Farris testified in his deposition that he was employed by Morrison-Knudsen and assisted in the design of the installation. The office manager of Yellowtail Constructors testified that Farris was not employed by Yellowtail Constructors and that Yellowtail Constructors "purchased engineering and consultative services from Morrison-Knudsen".

█ As noted supra, section 92–204 R.C.M.1947, gives a right of action against third parties when the "injury or injuries * * * are caused by the act or omission of some persons or corporations other than his employer".

Defendants contend that under this provision immunity is granted to Morrison-Knudsen as an "employer" regardless of whether or not it was acting as a third party, and that under the express terms of the statute, by accepting benefits under the Workmen's Compensation Act, the plaintiffs necessarily waived whatever other rights they might have against any member of the joint venture.

On the other hand, plaintiffs argue that Morrison-Knudsen dealt with the joint venture outside of and apart from the joint venture, that in performing these services Morrison-Knudsen was not an "employer", and any negligence of its employees was in no way connected with the joint venture's employment contract.

None of the parties have cited any cases directly in point. It is of course clear that an action may be maintained for the injury or death of a workman against a tortfeasor who is not his employer. In Sullivan v. City of Butte, 1945, 117 Mont. 215, 157 P.2d 479, the plaintiff was employed by a company which had entered into a contract with the city. He was delivering asphalt to a road job when he was injured by the negligence of an employee of the city. In holding that the city was a third party and not immune from suit, since plaintiff was not its employee, the court said in part:

"* * * The mere fact that plaintiff's employer, M. F. Kiely & Son, is insured under the same plan (Plan 3) as is Hannifin's employer, the City of Butte, does not render the city immune from plaintiff's statutory suit for damages. To render such immunity there must first exist the contractual relation of employer and employee as such terms are defined in the

Act and since this relation did not exist between plaintiff and defendant city the Act does not render defendant immune from either suit for liability." (117 Mont. at 218, 157 P.2d at 481).

Plaintiffs also rely upon cases from other jurisdictions holding that a subcontractor is not immune from a third party suit by an employee of a principal contractor on the same project, where the injury is caused by the negligence of an employee of the subcontractor. In reaching this conclusion in Brown v. Arrington Construction Co., 1953, 74 Idaho 338, 262 P.2d 789, the court said:

"The principal being liable by statute for payment of compensation to the injured employees of subcontractor, we have properly held that the principal is not a third person within the meaning of the statute. However, the statute creates no liability on the part of the subcontractor to pay compensation to an injured employee of the principal. Their common-law relationship is not altered. The statute should not be extended by construction to abrogate this common-law relationship as the statute does not expressly so provide or necessarily so imply. We are of the opinion that a subcontractor is a third person against whom a suit will lie by an employee of the principal for injuries occasioned by the negligence of the subcontractor's employee although the employees are engaged in common employment." (262 P.2d at 795).

There is a question as to whether this principle would be extended to the factual situation here presented. A genuine issue of fact is presented with respect to the capacity in which Morrison-Knudsen was acting in performing the engineering services, as well as an issue of law as to whether in any event it was acting as an "employer" within the meaning of the statute. In my opinion the determination of this defense should await further factual proof and further discussion of the legal question presented. The motion for summary judgment on this ground accordingly will be denied.

5. Is summary judgment precluded by reason of alleged illegal conspiracy in restraint of trade?

In Count III of their third amended complaints, plaintiffs allege a violation of the Sherman Antitrust Act, §§ 1 and 2, as amended 15 U.S.C. §§ 1 and 2 (1958), and seek treble damages pursuant to the provisions of Section 4 of the Clayton Act, 38 Stat. 731, 737 (1914), 15 U.S.C. § 15 (1958).[12]

Plaintiffs allege that (1) the defendants entered into an illegal conspiracy in restraint of trade; (2) the conspiracy prevented safe construction companies from bidding the Yellowtail job; (3) lack of job safety caused the decedents' deaths; (4) consortium is a recognized property right in the state of Montana; and (5) plaintiffs were therefore injured in their properties as a result of the illegal conspiracy.

Apparently plaintiffs contend that the alleged violation of the Sherman and Clayton Acts preclude summary judgment for two reasons:

(1) The five corporations entered into an illegal contract in restraint of trade and accordingly are estopped from relying upon that contract "to achieve an immunity from suit".

(2) Plaintiffs' "incorporeal property right in the marital relationship" constitutes "property" within the meaning of the Sherman and Clayton Acts and plaintiffs have been injured in that property right by reasons of the alleged illegal conspiracy.

In support of their first contention, plaintiffs rely primarily upon Continen-

---

12. 15 U.S.C. § 15 provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

tal Wall Paper Co. v. Louis Voight & Sons Co., 1909, 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486. In that case, the plaintiff brought an action to recover the unpaid purchase price of merchandise sold and delivered by a "corporation created to effectuate a combination of wallpaper manufacturers, intended and having the effect directly to restrain and monopolize trade and commerce", in violation of the Sherman Act. In affirming judgment for the defendant, the Court said:

> "The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and *pursuant to which* the accounts sued on were made out, and which had for their object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. If judgment be given for the plaintiff the result, beyond all question, will be to give the aid of the court in making effective the illegal agreements that constituted the forbidden combination." (212 U.S. at 261, 29 S.Ct. 292) (Emphasis in original).

This principle is applicable to cases in which the illegal agreement itself is sought to be enforced, and a defense of an antitrust violation is held to preclude recovery. As the court said in Beloit Culligan Soft Water Service, Inc. v. Culligan, Inc., 7 Cir. 1959, 274 F.2d 29, 34, the Supreme Court has recognized the validity of the defense, "but only in a very limited situation where the judgment of the court would be the vehicle by which the unlawful conduct is carried out".

The limited scope of this defense in purchase contracts was clearly stated in Kelly v. Kosuga, 1959, 358 U.S. 516, 518, 79 S.Ct. 429, 3 L.Ed.2d 475, where the Court said, "As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court." The opinion then reviewed prior decisions of the Court and in particular discussed the holding in Continental Wall Paper, saying in pertinent part:

> "The Court was of the opinion [in Continental Wall Paper] that to give judgment for the excessive purchase price so fixed in favor of such a vendor would be to make the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act. 212 U.S., at 261, 29 S.Ct. at page 292. Any thought that the Court might have been proceeding on broader grounds was shortly afterwards laid to rest by the unanimous opinion of the Court in the *Wilder* case.[13] 236 U.S. at 177, 35 S.Ct. [398,] at page 402 [59 L.Ed. 528]. The scope of the defense of illegality under the Sherman Act goes no further. * * * Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wall Paper Co. v. Louis Voight & Sons Co., supra, 212 U.S. at 271, 29 S.Ct. at page 296. (Dissenting Opinion)." (358 U.S. at 520–521, 79 S.Ct. at 432).[14]

Obviously there is no similarity between the factual situations in Continen-

---

13. D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 1915, 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520.

14. Professor Milton Handler in an article on "recent Antitrust Developments", Review Association of Bar of City of New York, Vol. 14, No. 7, Oct., 1959, in com-

menting on the Kelly case said: "Presumably, unless the Court becomes an accessory after the fact by enforcing the precise conduct made unlawful by the statute, the agreement between the parties will be upheld and payment of the purchase price ordered."

tal Wall Paper and Kelly and that here presented. The holding in Kelly is significant in making it clear that even in purchase contracts the injured party may rely upon the Sherman Act as a defense only when the court would be "enforcing the precise conduct made unlawful by the act".

Turning now to plaintiffs' second contention, i. e., their claims for treble damages for injury to "property", it may be noted at the outset that the "purpose of the Sherman Antitrust Act is to prevent undue restraints of interstate commerce, maintain its appropriate freedom in the public interest, to afford protection from the subversive or coercive influences of monopolistic endeavor". Appalachian Coals Inc. v. United States, 1933, 288 U.S. 344, 53 S. Ct. 471, 77 L.Ed. 825. The private right to maintain an action for treble damages "is purely incidental and subordinate to this primary purpose of protecting the public". Nelligan v. Ford Motor Company, W.D.S.Car.1958, 161 F.Supp. 738, 741, aff'd 262 F.2d 556;[15] Brenner v. Texas Company, N.D.Cal.1956, 140 F. Supp. 240.

 Plaintiffs have cited no cases which have permitted recovery under a state of facts in any way comparable to this case. Guiding principles in other antitrust cases, however, make it clear that the Sherman Act was not intended to encompass an action of this nature, and that an injury which is merely a collateral effect of an alleged illegal restraint of competition is not compensable under the Act.

In determining whether the injury is collateral to or proximately caused by the violation, a trilogy of cases decided by the Court of Appeals for the Ninth Circuit cases is apposite. In Conference of Studio Unions v. Loew's, Inc., 9 Cir. 1951, 193 F.2d 51, the court held:

"[I]n order to state a cause of action under the anti-trust laws a plaintiff must show more than that one purpose of the conspiracy was a restraint of trade and that an act has been committed which harms him. He must show that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry. Otherwise he is not injured 'by reason' of anything forbidden in the anti-trust laws." (193 F.2d at 54–55).

This case was relied upon in Karseal Corporation v. Richfield Oil Corporation, 9 Cir. 1955, 221 F.2d 358. The court there stated:

"Turning now to the cases concerning the 'target area' or proximate causation, the rule is that one who is only *incidentally* injured by a violation of the anti-trust laws,—the bystander who was hit but not aimed at,—cannot recover against the violator. (citing cases)." (221 F.2d at 363) (Emphasis in original).

Finally, in Twentieth Century Fox Film Corporation v. Goldwyn, 9 Cir. 1964, 328 F.2d 190, the court stated with reference to the Karseal opinion:

"But in using the words 'aimed at' this court did not mean to imply that it must have been a purpose of the conspirators to injure the particular individual claiming damages. Rather, it was intended to express the view that the plaintiff must show that, whether or not then known to the conspirators, plaintiff's affected operation was actually in the area which it could reasonably be foreseen would be affected by the conspiracy." (328 F.2d at 220).

---

15. In affirming an order dismissing the complaint, the Court of Appeals said in part:
"* * * We cannot sustain a complaint which does not allege with reasonable definiteness facts from which the court may infer conduct in restraint of trade of the kind prohibited by the anti-trust laws, and from which an inference of public injury may reasonably be extracted." (262 F.2d at 559).

It is clear that the Sherman Act "does not purport to afford remedies for all torts committed by or against persons engaged in interstate commerce". Hunt v. Crumboch, 1945, 325 U.S. 821, 826, 65 S.Ct. 1545, 89 L.Ed. 1954. Plaintiffs have cited no antitrust case involving an action for damages for personal injuries. The only case this court has found is Tepler v. Frick, S.D. N.Y.1952, 112 F.Supp. 245, aff'd 2 Cir. 1953, 204 F.2d 506. There a baseball pitcher brought action against the Commissioner of Baseball for treble damages under the antitrust laws, and for damages for personal injuries. In holding that the complaint was insufficient to state a cause of action, the court said:

"While there is a detailed description of a monopolistic system which, it is said, reduces a baseball player to a status of peonage, the closest scrutiny of the complaint does not disclose what acts these defendants performed in violation of the anti-trust laws to the injury of the plaintiff. Actually, what seems to be alleged is that the defendants are part of a monopoly and that they took action to the injury of the plaintiff. However, I do not find the necessary allegations of damage to the plaintiff resulting proximately from the acts of the defendant which constitute violation of the anti-trust laws." (112 F.Supp. at 245).[16]

Nor is the allegation of an injury to "property" sufficient to permit recovery under the Sherman and Clayton Acts. "The term 'business or property' is used in the ordinary sense and denotes a commercial venture or enterprise". Broadcasters, Inc. v. Morristown Broadcasting Corp., D.N.J.1960, 185 F.Supp. 641, 644, and cases there cited. Although plaintiff correctly cites Waldron v. British Petroleum Co., supra, for the principle that "property" is a much broader term than "business", yet that case also holds that it must be a type of property that is legally protected. While it may be true that the right of consortium is a "property" right in Montana, in no case has it been held that the antitrust laws were intended to protect a property right of this nature.

Assuming, as plaintiffs have alleged, that the defendants entered into an illegal conspiracy in restraint of trade, plaintiffs have failed to state a claim under the Sherman and Clayton Acts. The property right sought to be protected is not one encompassed by the antitrust laws. Defendants are not seeking to enforce any conduct made unlawful by the Acts. Plaintiffs have not shown that they were injured "by reason" of anything forbidden in the antitrust laws. Rather, any injuries were collateral to and not proximately caused by the alleged violation.

Accordingly plaintiffs' third cause of action fails to state a claim. Viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the plaintiffs, defendants are entitled to prevail as a matter of law. In Suckow Borax Mines Consolidated v. Borax Consolidated, 9 Cir. 1950, 185 F.2d 196, 205, cert. denied, 1951, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680, the court stated that, "The whole purpose of the summary judgment rule is to separate real and genuine issues from mere formal or pretended issues." See also 6 Moore's Federal Practice 2057, para. 56.04 [1].

Accordingly it is ordered:

1. The motion of the defendants Morrison-Knudsen Company, Inc., Perini Corporation, Walsh Construction Company, Inc. and Kaiser Company with respect to Count III of the amended complaints in each case is granted, and this count is dismissed.

2. In all other respects the motions are denied, with the understanding that

16. For a discussion of other types of claimants held to be without standing to sue for alleged violations of antitrust laws, see Waldron v. British Petroleum Co., S.D.N.Y.1964, 231 F.Supp. 72, 85; Walder v. Paramount Publix Corporation, S.D. N.Y.1955, 132 F.Supp. 912.

further consideration will be given to the other grounds of the motions at the time of pretrial conference. Prior to pretrial conference, counsel for plaintiffs are requested to set forth the evidence upon which they rely in support of their contentions (a) that there was in fact no joint venture, and (b) that there was a change of employer without the knowledge and consent of the employee.