Billy LeRoy SMITH, Plaintiff,

v.

KENOSHA AUTO TRANSPORT, a corporation, and Glen Edward Hanson, Defendants.

No. 852.

United States District Court
D. Montana,
Helena Division.

Feb. 2, 1964.

772

Floyd O. Small and Michael Hughes, Helena, Mont., for plaintiff.

Risken & Scribner and Herron & Mufich, Helena, Mont., for defendants.

MURRAY, Chief Judge.

After judgment in the sum of $180,-000.00, based on a jury's verdict, was entered in favor of plaintiff for personal injuries received in a collision between two trucks, the defendants move in the alternative for judgment notwithstanding the verdict or for a new trial. By agreement of counsel, the motion was submitted to the court upon written briefs without oral argument.

While various grounds for the motion are recited therein, it is clear from defendants' brief that the sole question presented by the motion concerns the amount of the verdict. Defendants state in their brief "As to liability, the case could very well have resulted in a plaintiff's verdict, and there was sufficient undisputed evidence of injury and pain and suffering to justify a verdict in *some* amount. However, defendants do contend that the *amount* of the verdict was contrary to the evidence presented and to the law applicable to such evidence as presented to the jury by the Court." (Emphasis defendants). They also contend that the verdict was so excessive as to appear to have been rendered under the influence of passion and prejudice.

■ Before considering the evidence it may be appropriate to set forth a few principles of law relative to motions for new trials. In the first place, because this court's jurisdiction is based on diversity of citizenship, the motion is to be considered under Montana Law. Moore v. Rosecliff Realty Corp., D.C., 88 F.Supp. 956. However, this proposition is relatively unimportant in this case because there is no great difference in the Montana and federal law applicable to the motion for a new trial.

■■ Where sufficiency of the evidence is the question involved, the court's duty on a motion for a new trial is different than its duty on a motion for directed verdict. On a motion for directed verdict, if there is any evidence in support of the position of the party against whom the directed verdict is sought, the motion may not be granted. However, on motion for new trial, the court must weigh the evidence and determine whether or not it is substantial and sufficient in law to support the verdict. Adams v. United States, 7 Cir., 116 F.2d 199; Pessagno v. Euclid Inv. Co., 72 App.D.C. 141, 112 F.2d 577; Love v. McDonnell, 65 Mont. 482, 211 P. 211. The court's duty and power in examining the evidence in connection with a motion for new trial was stated by the Montana Supreme Court as follows in Hinton v. Peterson, 118 Mont. 574, 169 P.2d 333, at 335:

"There are cases which hold that the matter of granting a new trial for insufficiency of the evidence to justify the verdict rests in the discretion of the trial court. * * * We think the rule stated in these cases is too broad to be applied in every case. If there is substantial evidence supporting the verdict, then it will not do to say that the evidence is insufficient to support the verdict. The court's discretion is exhausted when it finds substantial evidence in support of the verdict. Finding substantial evidence in the record to support the verdict, it would be unwarranted action to

grant a new trial. * * * The weight of the evidence and the credibility of witnesses are exclusively for the jury. Section 10508, Revised Codes. And the direct evidence of one witness, who is entitled to full credit, is sufficient for proof of any fact, except perjury and treason."

See also, 39 Am.Jur. "New Trial" Section 133, p. 143; Batchoff v. Craney, 119 Mont. 157, 172 P.2d 308; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; McVeigh v. McGurren, 7 Cir., 117 F.2d 672.

■ Without reciting the testimony in detail, there was in this case sufficient credible evidence from which the jury could have found the following: At the time of the accident, the plaintiff was 34 years of age, married and the father of six children. He was employed as a truck driver by Consolidated Freightways, an occupation which he had followed for some years. At the time of the accident on March 2, 1961, he was earning approximately $10,000 a year, and the prospects were good that his earnings would have increased. His life expectancy at that time was 36.7 years, and in connection with his work expectancy, there was evidence that truck drivers with Consolidated Freightways continued such employment until they became 50, 55 and more years of age.

About a year prior to the accident in question, the plaintiff suffered from a nervous disorder, said to result from association with his brother, and consulted a neurologist, who prescribed medication and rest. At that time the doctor diagnosed plaintiff's condition as a possible paroxysmal disorder. Plaintiff responded to the medication and after being off work for a period of about 6 weeks, the doctor released him and he returned to work and continued to work up until the accident of March 2, 1961.

Prior to the accident he was considered by his supervisors and fellow employees as a better than average truck driver, and a willing and able worker. He was happy and enthusiastic about his work and happy and congenial in his relationships with his family and friends.

The accident occurred at 2:30 or 3:00 A.M., March 2, 1961, near White Sulphur Springs, Montana, when an empty automobile transport, owned by the corporate defendant and driven by the individual defendant, crossed over the center line of the highway and struck the Consolidated Freightways truck being driven by plaintiff. Both vehicles were demolished in the collision. In the accident, plaintiff sustained a fractured right arm, bruises and abrasions on his legs and arms, and injuries and cuts about the head and face. He was momentarily knocked unconscious at the time of the impact, but regained consciousness and vaguely remembers being brought to the hospital at White Sulphur Springs. However, he again lapsed into unconsciousness in the hospital, and because of this and the apparent head injuries, the doctor at White Sulphur Springs transferred him to Billings, Montana, to the care of a neurologist and a neurosurgeon. He remained unconscious or semi-conscious for several days, after which he gradually regained consciousness without radical treatment such as surgery. He remained in the Billings hospital approximately two weeks undergoing treatment for his broken arm, cuts and bruises as well as his head injuries.

After a period of several months plaintiff attempted to return to work, but after making four runs he was forced to quit, and has been unable to work since, because of pain and discomfort and "spells" which he found difficult to describe, but which the doctors diagnose as epileptic seizures of the petit mal type.

In addition to being unable to work, plaintiff's personality changed to the extent that he withdrew from all social contacts and his relationship with his family deteriorated to the point where his oldest daughter left home because of his treatment of her, and his wife became afraid to leave the younger children alone in his care. In their brief in support of their motion, counsel for defendants refer to "the pathetic figure of the

plaintiff in the courtroom and on the stand". He sat throughout the several days of the trial staring and unmoving, almost rigid and on the stand, while his speech was rational and coherent, he was hesitant and slow to answer and seemingly had difficulty in comprehending the questions and formulating the answers. This demeanor of the plaintiff was also before the jury.

From the medical testimony, the jury could have found that plaintiff suffers from both physical brain damage demonstrable by pneumo-encephalogram and manifesting itself in petit mal epileptic seizures, and from a psychological disorder. The medical evidence in this respect is largely uncontradicted, the only question raised by defendants being whether the condition was caused by the accident or pre-existed the accident in view of the diagnosis of a convulsive disorder in the plaintiff a year preceding the accident. The fact remains that after the previous diagnosis, the plaintiff recovered and performed well as both a worker, and a husband and father until his injury in the accident. In addition, there was positive medical testimony to the effect that plaintiff's condition at the time of trial resulted from the injuries received in the accident and/or the aggravation of a previous condition, which in itself was not disabling in the least. There was also medical testimony that plaintiff's condition is permanent and progressive.

This evidence amply supports the amount of the verdict. As of the time of the trial plaintiff had already suffered a loss of earnings of approximately $25,-000. Future loss of earnings during his life and work expectancy, even reduced to present value, would account for a large portion of the remaining amount of the award. In addition, there is physical pain, suffering, past and future, humiliation and mental anguish resulting from his changed personality and destruction of his family life, all supported by the evidence, which would warrant a verdict in a considerable amount.

■ The foregoing also applies to defendants' contention that the verdict is so excessive that it must have resulted from passion and prejudice. It is only when the amount of the verdict is such as to shock the conscience of the court or to cause the court to believe that it was the result of sympathy, passion or prejudice, or that the jury, in fixing the amount of damages, was motivated by factors that should not have been taken into consideration, that the court may set aside a verdict. Werthan Bag Corp. v. Agnew, C.A.6—1953, 202 F.2d 119; Lebeck v. William A. Jarvis, Inc., D.C.Pa.—1956, 145 F.Supp. 706, affirmed 250 F.2d 285; Draper v. Erie R. Co., D.C.Pa.—1960, 183 F.Supp. 899; Hogue v. Permanent Mold Die Co., D.C.Mich.—1959, 177 F. Supp. 229; Frank v. Atlantic Greyhound Corp., D.C.D.C.—1959, 172 F.Supp. 190. This rule announced so often in federal courts is also the rule followed by the Montana Supreme Court. Sullivan v. City of Butte, 117 Mont. 215, 157 P.2d 479; Brown v. Columbia Amusement Co., 91 Mont. 174, 6 P.2d 874; McCartan v. Park Butte Theater Co., 103 Mont. 342, 62 P.2d 338; Thompson v. Yellowstone Livestock Commission, 133 Mont. 403, 324 P.2d 412. From the summary of the evidence and what has been said above, it is apparent that the amount of the verdict does not shock the conscience of the court, and the court does not believe the amount of the verdict was influenced by passion or prejudice, sympathy, or any other improper considerations.

Defendants' contention that the verdict is contrary to law is based on the following argument: The evidence showed that there were seven or more doctors who had treated plaintiff either prior to the accident for conditions unrelated to the accident, or at the time of and after the accident. These were Dr. Roney, a neurologist, Dr. Schwidde, a neurosurgeon, Dr. Hagen, an orthopedist, Dr. Harr, a psychiatrist, and Drs. Kronmiller and Biehn, and a doctor at the hospital in White Sulphur Springs, apparently general practitioners. In addition, subsequent to the accident, the plaintiff was admitted to the Montana State Hos-

pital at Warm Springs, Montana, for observation and treatment. Of these doctors, only Dr. Schwidde appeared and testified at the trial, and a deposition of Dr. Roney was admitted in evidence. In addition, there were two other general practitioners who had examined the plaintiff and testified at the trial.

Defendants requested and the court gave an instruction that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the party to produce, the evidence offered should be viewed with distrust.

Defendants argue that the evidence of all of the other doctors who did not appear and testify would have been stronger evidence within the power of the plaintiff to produce than the medical evidence which was produced, and that the jury, in accepting the medical testimony which was produced, apparently ignored the instruction that weaker evidence should be viewed with distrust.

This argument is unsound for two reasons.

In the first place, under the instruction, it was for the jury to determine whether the medical testimony offered was weaker and less satisfactory than other evidence within the power of the plaintiff to produce. Apparently the jury did not find the evidence produced weak and unsatisfactory.

Furthermore, assuming that the jury did find that the medical testimony which was produced was weaker and less satisfactory evidence, and that they should have distrusted such evidence, nevertheless, under the law of Montana, they were entitled to base a verdict on such evidence. In Batchoff v. Craney, supra, at page 312 of the Pacific Reporter, the Montana Supreme Court stated: " 'It follows that, although the jury may reject the false testimony and "assume, regarding the rest of it, an attitude of distrust," the jurors may render a verdict based upon the testimony of such witness if after examination they find it worthy of belief.' " (Citing cases).

For the foregoing reasons defendants' alternative motion for judgment notwithstanding the verdict or for a new trial be and the same is hereby denied.