No. 12206

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

_____

HUGH R. KELLEHER,

Plaintiff and Respondent,

-vs-

STATE OF MONTANA & MONTANA AERONAUTICS COMMISSION,

Defendants and Appellants.

_____

Appeal from: District Court of the First Judicial District,
Honorable Victor H. Fall, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Symmes, Forbes, Peete and Brown, Billings,
Montana.
Weymouth D. Symmes argued, Billings, Montana.
Geoffrey L. Brazier, Helena, Montana.

For Respondent:

Small, Cummins and Hatch, Helena, Montana.
Floyd O. Small argued, Helena, Montana.

_____

Submitted: June 16, 1972

Decided: NOV - 9 1972

Filed: NOV - 9 1972

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is a personal injury action brought by the manager of the Helena City-County Airport against the state of Montana and the Montana Aeronautics Commission for damages resulting from injuries received in an airplane crash. A jury in the district court of the first judicial district, county of Lewis and Clark, returned a verdict in favor of plaintiff in the amount of $245,000. Judgment was entered thereon. After denial of their motion for a new trial, defendants appeal the final judgment.

Plaintiff was returning from a meeting at Lewistown, Montana, which involved him in his capacity as city-county airport manager, when a Cessna 185 single engine aircraft owned by the Montana Aeronautics Commission and piloted by Charles Lynch, Executive Secretary of the Montana Aeronautics Commission, crashed. Plaintiff along with Henry Loble, general counsel for the Commission, was a passenger at the invitation of Lynch because the plane in which plaintiff had flown to Lewistown was not returning to Helena. All three men had been in attendance at a meeting of the Northern Plains Air Transportation Council in Lewistown.

For the purposes of this appeal, defendants have assumed, in light of the jury's verdict, that the pilot Lynch was negligent in the operation of the aircraft. It is also agreed that plaintiff was covered by and received maximum workmen's compensation benefits , as hereinafter set forth in our discussion of issue No. 1.

Defendants rely on three issues in support of their appeal:

1. That the court erred in striking from defendants' amended answer its defense that plaintiff was an employee of the state of Montana, to-wit, manager of the city-county airport in Lewis and Clark County. The city-county airport carried workmen's compensation insurance and plaintiff was paid and

accepted it. This was stipulated at trial and should have resulted in dismissal of the action.

2. The verdict was so excessive so as to shock the conscience of an ordinarily prudent person.

3. Numerous minor errors were committed during the course of the trial which in themselves would not be sufficient to constitute prejudicial error, but, when combined, would be sufficient to constitute prejudicial error.

Defendants' issue No. 1 concerns their primary defense which they contend bars this action under the Workmen's Compensation Act. They rely specifically on section 92-204, R.C.M. 1947, of that Act which provides in pertienent part:

> "Where both the employer and employee have elected to come under this act, the provisions of this act shall be exclusive, and such election shall be held to be a surrender by such employer and the servants, and employees of such employer and such employee, as among themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, <u>except as such rights may be hereinafter specifically granted</u> * * *.  <u>Provided</u>, that whenever such employee shall receive an injury while performing the duties of his employment and such injury or injuries, so received by such employee, are caused by the act or omission of some persons or corporations other than his employer, or the servants or employees of his employer, then such employee, or in case of his death his heirs or personal representatives, <u>shall, in addition to the right to receive compensation under the Workmen's Compensation Act, have a right to prosecute any cause of action he may have for damages against such persons or corporations, causing such injury</u>. * * *."
> (Emphasis supplied)

In addition to preserving the common-law right to third party action to employees, this section also gives to the employer or insurance carrier paying the compensation the right of limited subrogation and the additional right to bring the third party action if the employee fails to do so within six months of his injury.

We find no necessity to cite cases that interpret the intended meaning of the terms "employer" and "employee" as used

- 3 -

and defined in sections 92-410 and 92-411, R.C.M. 1947, of the Workmen's Compensation Act. It is sufficient to point out that the general accepted definition of the term "employee' is a person in service under any appointment or contract of hire, express or implied, oral or written, and considered as "actual" employment.

In addition to the general class of employer and employee contemplated originally by the Workmen's Compensation Act, as noted above, the legislatures of the various states, including Montana, have by statute extended coverage under workmen's compensation to certain specific classes of employees who are not "actual employees" within the original definition discussed above, that is, they have no direct contract of employment. However, this coverage is usually extended to protect the employees of irresponsible and uninsured subcontractors or independent contractors. An equal basic purpose of the Act is to make the remedies provided exclusive under the Act and to insulate the employer, liable for compensation payment, immune from third party actions by the employee. Montana has done this in cases of statutory employers, some states have not. Sections 92-438, 92-604, R.C.M. 1947.

Larson's Workmen's Compensation Law, V. 1A, Ch. 9, § 49.11, pp. 855-858, explains the rationale of this statutory extension of coverage:

> "The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumable responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers. This being the rationale of the rule, in the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon sub-subcontractors, if any employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor. * * *
>
> "The statute also aims to forestall evasion of the act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping

direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry (and, if small enough, may not even be required to carry) compensation insurance. " (Emphasis supplied).

It is important in the analysis of this problem to recognize that the rationale of the statutory employer-employee extension by the legislature is for the benefit of the employee and that such a benefit conferring a liability on the employer is co-existent with immunity from common-law liability.

In the instant case it is clear that Charles Lynch, the negligent pilot, was an actual employee of the state of Montana and its aeronautics commission under the accepted definition heretofore discussed.

It is equally clear that plaintiff under a contract of employment with the city-county airport is not an "actual" employee of the state of Montana under the accepted definitions. It does not appear that defendants contend plaintiff is an "actual" employee the same as the pilot; but, in a rather unusual multipronged approach, seem to contend that plaintiff falls into the position of a "statutory employee" of the state of Montana or the state is a "statutory employer" of plaintiff, although defendants never quite get to the terminology of statutory employer or employee. Defendants seem to contend "that the plaintiff, as manager of the city-county airport located near Helena, was a servant of an agency created by the State of Montana carrying out its governmental function. " (Emphasis supplied).

In another statement defendants contend that "the City-County Airport Commission was a sub-division of the State of Montana, and as such, the State of Montana and its Montana Aeronautics Commission were the actual employers of the plaintiff * * *." (Emphasis supplied). Even with the one isolated reference to "actual" employment, the totality of defendants' language does not seem to urge "actual employment" as used in the Act.

- 5 -

There is no law in this state nor is any cited by defendants from other jurisdictions, that creates statutory employment by an act of the legislature establishing an agency or commission, such as an airport commission, nor do the statutes cited giving the State Aeronautics Commission regulatory control over airport operation, create this legal fiction. As discussed earlier, these creations must be found within the Act and the extinguishing of the common-law rights should be strictly construed. Madison v. Pierce, 156 Mont. 209, 217, 478 P.2d 860.

In fact, section 92-410, R.C.M. 1947, cited by defendants and which defines "employer", specifically permits the "state and each county, city and county, city school district, irrigation district, all other districts established by law and all public corporations and quasi-public corporations and public agencies therein * * *" to be separate employers under the Act. Lacking statutory or case authority to establish an employee-employer relationship, defendants' position cannot be sustained.

Defendants' issue No. 2 questions the amount of the verdict contending that such verdict was excessive and should be set aside, a new trial granted, or at the very least, the verdict should be substantially reduced.

Defendants maintain plaintiff had preexisting disabilities which "prevented him from doing manual labor long before the aircraft accident with which we are concerned in this case". They also argue plaintiff "has recovered from all the injuries suffered by him except continuing discomfort of his back on occasions."

On reading the entire record, including the testimony of two doctors, plaintiff's coemployees, and plaintiff, we find:

Plaintiff at time of trial was 44 years of age, married with three children aged 22, 15 and 11. He had a high school education and a life expectancy of 28.67 years. More than 25 years ago, at approximately age 16, plaintiff fell down an elevator shaft and injured his right leg. From that accident,

he developed osteomyelitis in the leg, had several surgical operations and was left with "a fair amount of residuals in the leg." The net effect of that accident was a stiff knee, his right leg was shortened approximately one inch, and he walked with a limp. However, prior to trial of this action plaintiff had been free of any symptoms of osteomyelitis for a period of more than 13 years and had no complaints concerning his leg throughout that time.

Plaintiff's employment record reveals he started working for the city of Helena after graduation from high school as a general laborer at various jobs including the water department, lighting department, and street department. Such work consisted of pick and shovel work, laying cable, and handling heavy equipment. He worked eight hours per day, six days per week and had no difficulty doing the work. When plaintiff went to work for the city-county airport, he worked as general maintenance man plowing runways, mowing weeds,and other things connected with the general maintenance. He was promoted to the position of manager of the city-county airport which work was primarily administrative and management, although at times before the accident involved here he assisted with maintenance work in heavy rush periods.

Following the accident, plaintiff was treated in the hospital by Dr. Bossler who had been plaintiff's family doctor for thirteen years. Plaintiff's injuries as listed by Dr. Bossler included: multiple bruises throughout his body; laceration over one eye; injury to his right shoulder; some rib fractures; sore left ankle; injury to his right knee; compression fracture of the transverse process of L4 and a fracture of the spinous process of L4; bleeding from a cut on his head; fracture of the bones about the face and left zygomatic arch; and an injured finger.

As a result of the injuries, plaintiff was placed in a back brace which he continues to wear most of the time; he has per-

manent residuals of the back injury, finger injury, both legs; numbness to the left side of his head resulting from nerve injury to the side of his head; and headaches. Plaintiff regularly receives treatment in the form of painkillers. His condition is permanent and is compounded by emotional trauma caused by the injuries and the need for continued treatment to alleviate pain.

Dr. Trobough of Anaconda, the other examining physician, testified that the compression fracture is a disabling injury which cannot be relieved or rectified by surgery. He also testified plaintiff had a permanent residual in the form of weakness in his shoulders, tiredness in his arms, accompanied by a tingling and numbness which is "just a strain pattern of the shoulders. I think it was just a strain pattern and the shoulders were strained."

Dr. Trobough gave the following testimony as to the compression fracture:

> "I think compression fracture of a vertebra causes considerable muscle spasm and ligamentous injury of the tissues around this vertebra, plus there is narrowing of the intervertebral space and there could be some evidence of compression injuries to the nerves, plus generally a lot of muscle spasm. Limitation of motion of the back is a result of these compression fractures."

Dr. Trobough also testified that the old injury to plaintiff's right leg had been definitely aggravated by the plane accident and with reference to the extent of plaintiff's disability he testified:

> "My disability rating will be based mainly on the fracture of his back. Anyway, I said now two years and three months after the accident the patient is still having subjective complaints as a result of his injuries on September 23, 1969. They are, in my opinion, of a permanent nature and he will continue to require medical attention, care and medication. Any work that involves the use of the back, especially in the labor field or anything that causes even average manual labor, I feel he is 100 percent totally disabled. On the basis of the above diagnosis, in my opinion, he has a 55 percent permanent disability."

Plaintiff's coemployees, Mr. Richard McCord and Mrs. Dorothy Moe, testified that upon returning to his job after the accident of September 23, 1969, plaintiff was not able to perform any physical labor; that he is quite nervous and appears to be suffering most of the time; he cannot sit for very long; that he is short-tempered and frequently breaks out in a rash on his arms when he is nervous; and, that here are repeated instances of his being in pain.

Defendants have raised the issue of plaintiff's condition with emphasis on his preexisting inability to engage in manual labor prior to this accident attributed to his fall 25 years ago. Yet, defendants offered no evidence to controvert plaintiff's evidence of years of manual labor following the first injury nor did they offer evidence to controvert his present condition. Defendants had plaintiff examined by an orthopedic surgeon, Dr. Harris Hanson of Helena, but failed to submit the results of that examination of plaintiff to the jury. As a result, the record contains some claimed inconsistencies elicted on medical cross-examination of plaintiff's medical witnesses but such inconsistencies do not overcome plaintiff's evidence to a degree that the jury did not have before it substantial credible evidence upon which it could render its verdict.

In addition to preexisting disability, defendants base their argument of excessive damages primarily on the contention that a review of all of the cases decided by this Court does not reveal a jury verdict of this size. They argue that this Court over the years has been confronted with hundreds of personal injury cases with injuries substantially more severe than those suffered by plaintiff here, but there have been no verdicts this large. Defendants cite to this Court for comparison of damage awards, Sheehan v. DeWitt, 150 Mont. 86, 430 P.2d 652, which held a county attorney struck in the face was not entitled to $1,500 because no treatment was required and it was not a serious injury;

- 9 -

and Jewett v. Gleason, 104 Mont. 63, 65 P.2d 3, a 1937 case where a $12,000 verdict on a back injury case was reduced by $4,000.

These arguments fail to recognize the criteria which governs the examination of damage awards by this Court. This Court and the Federal Courts in applying Montana law recently have spoken in unison in this area with clear and concise language. Smith v. Kenosha Auto Transport, 226 F.Supp. 771, 774, (D.C.Mont. 1964); Strong v. Williams, 154 Mont. 65, 71, 460 P.2d 90; Salvail v. Great Northern Ry., 156 Mont. 12, 31, 473 P.2d 549.

In Smith, in the contest of an $180,000 award, the Federal Court stated:

> "The medical evidence in this respect is largely un-
> contradicted, the only question raised by defendants
> being whether the condition was caused by the acci-
> dent or pre-existed the accident in view of the diagnosis
> of a convulsive disorder in the plaintiff a year preceding
> the accident. The fact remains that after the previous
> diagnosis, the plaintiff recovered and performed well
> as both a worker, and a husband and father until his
> injury in the accident. In addition, there was positive
> medical testimony to the effect that plaintiff's condi-
> tion at the time of trial resulted from the injuries
> received in the accident and/or the aggravation of a
> previous condition, which in itself was not disabling in
> the least. There was also medical testimony that plain-
> tiff's condition is permanent and progressive."

The Court in answer to the contention that the award was ex-

cessive, went on to say:

> "The foregoing also applies to defendants' contention
> that the verdict is so excessive that it must have
> resulted from passion and prejudice. It is only when
> the amount of the verdict is such as to shock the
> conscience of the court or to cause the court to be-
> lieve it was the result of sympathy, passion or pre-
> judice, or that the jury, in fixing the amount of
> damages, was motivated by factors that should not have
> been taken into consideration, that the court may set
> aside a verdict. [Citing cases] This rule announced so
> often in federal courts is also the rule followed by
> the Montana Supreme Court. Sullivan v. City of Butte,
> 117 Mont. 215, 157 P.2d 479; Brown v. Columbia Amuse-
> ment Co., 91 Mont. 174, 6 P.2d 874; McCartan v. Park Butte
> Theater Co., 103 Mont. 342, 62 P.2d 338; Thompson v.
> Yellowstone Livestock Commission, 133 Mont. 403, 324 P.2d
> 412. From the summary of the evidence and what has been
> said above, it is apparent that the amount of the verdict
> does not shock the conscience of the court, and the court
> does not believe the amount of the verdict was influenced
> by passion or prejudice, sympathy, or any other improper
> considerations."

In _Strong_, this Court stated:

"In personal injury actions there is no fixed measuring stick by which to determine the amount of damages, other than the intelligence of the jury; that the jury is allowed a wide latitude and unless it appears the amount awarded is grossly out of proportion to the injury as to shock the conscience, this Court will not substitute its judgment for that of the jury, especially where, as here, the trial court has approved the verdict by denying the motion for a new trial." (Emphasis supplied).

In _Salvail_, the Court entered this restatement:

"It is idle to cite cases from this or other jurisdictions on awards by juries for certain injuries as no two cases are alike and each case turns on its own facts. In 11 A.L.R.3d there are 713 pages of cases for comparison.

"The amount to be awarded as damages is properly left to the jury and this Court will not substitute its judgment for that of the jury particularly where, as here, the trial court has approved the verdict by denying a new trial. Strong v. Williams, 154 Mont. 65, 460 P.2d 90. It is only where the amount awarded is so grossly out of proportion to the injury as to shock the conscience that this Court will intervene. In the instant case the verdict of $125,000 is not so grossly out of proportion to the injury as to shock our conscience nor induce a belief that it was the product of passion or prejudice. There is nothing whatsoever in the record to indicate passion or prejudice; on the contrary, there is a substantial evidentiary basis justifying the amount of the award." (Emphasis supplied).

Here, the jury has made its award for physical damages caused to a 44 year old plaintiff with a life expectancy of 28.67 years. He must endure those injuries for that time. The trial court has refused to grant a new trial. We find nothing in the record to indicate the jury was motivated by factors which should not have been taken into consideration, such as passion, prejudice or sympathy. In light of the times and the growing awareness within the legal processes that has attempted to conform damage awards to the extent of the injuries sustained, the amount of the verdict does not shock the conscience of the Court and we find no error.

Defendants' issue No. 3 requires no extended discussion. They contend that a series of errors occurred during the trial none of which, standing alone, would be sufficiently prejudicial to authorize a new trial, but the totality of which consituted

- 11 -

manifest prejudice to defendants, requiring a new trial. The errors to which defendants direct our attention are: (1) Alleged speculative opinion evidence by expert witness Hamer that the moist condition of the spark plugs found in the wreckage of the aircraft several hours after the accident might have been caused by flooding resulting from a prolonged power-off glide to a lower altitude and a subsequent application of the throttle. (2) Testimony of expert witness Leaphart that there were a lot of places in the vicinity of the crash site where "you could touch down an airplane in that area and come out of it reasonably unscathed." (3) Undue concern by the trial judge for plaintiff's physical condition and comfort while testifying.

Items (1) and (2) are irrelevant to this appeal in any event. They refer only to the issue of the pilot's negligence. Defendants concede this issue on appeal. This is demonstrated by the following statement in their brief: "However, in the light of the jury's verdict, we shall assume for the purposes of this brief on appeal only that [the pilot] was negligent in the operation of the aircraft."

Item (3) likewise is without merit. The trial judge simply advised plaintiff that if he wanted to stand up at any time while testifying to do so, and that if he needed a recess to say so. Defendants' attorney was similarly solicitous of plaintiff's physical condition in like manner, and raised no objection at the trial to the judge's remarks. Under such circumstances the claim of prejudicial error upon appeal is without substance.

The judgment of the district court is affirmed.

_Gene B. Daly_
Associate Justice

- 12 -

We Concur:

_James L Harrison_
Chief Justice

_Frank L Haswell_

_John Conway Harrison_
Associate Justices

Mr. Justice Wesley Castles dissenting:

I dissent. I shall not dwell at length on the matter but will observe that the Workmen's Compensation Act, in my view, forecloses an action by an employee of one state agency against another state agency. Both agencies involved here are creatures of the Legislature, both financed by public tax monies.

Additionally, on issue No. 2, I would grant a new trial because the damages awarded are excessive. Here we have an employee in a managerial position who has in fact returned to work and has had a salary increase since his return. In his position he is fully able to do the job and a quarter of a million dollar judgment shocks my conscience. I would grant a new trial.

_Wesley Castles_
Associate Justice.